IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHRYN ASH,

       Plaintiff,

v.

CITY OF PORTLAND,

       Defendant.

Case No. 3:24-cv-434-SI

OPINION AND ORDER

Kathryn Ash, Portland, OR 97219. Proceeding *pro se*.

Naomi Sheffield, City Attorney, OFFICE OF THE CITY ATTORNEY, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant City of Portland.

**Michael H. Simon, District Judge.**

       Plaintiff Kathryn Ash, representing herself, sues Defendant City of Portland ("City") under 42 U.S.C. § 1983 alleging that two members of the Portland Police Bureau ("Bureau") violated her First, Fourth, Fifth, and Fourteenth Amendment rights. Defendant moves to dismiss each of Plaintiff's claims. For the reasons stated below, the Court grants Defendant's motion to dismiss but grants Plaintiff leave to amend her complaint as to her claims under the First and Fourteenth Amendments.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

Plaintiff is a resident of Portland, Oregon, and lives in a house with her husband and children. Compl. (ECF 1) ¶¶ 1, 2, 7. In February 2024, Plaintiff sent a letter to her neighbors, spouses Fallon Niedrist[1] and Leland De Guzman, whose home was immediately north of

---

[1] In her response, Plaintiff raises, for the first time, the contention that Niedrist is a Deputy City Attorney and that Defendant did not repudiate the officers' conduct in part because

Plaintiff's. *Id.* ¶ 1. In that letter, and in a subsequent letter mailed twelve days later, Plaintiff

asked Niedrist and De Guzman to cease trespassing and depositing debris on her property.[2] *Id.*

¶ 1. On March 2, 2024, Plaintiff "observed that an unidentified man. . . had entered [her]

property and deposited some debris." *Id.* ¶ 2. Plaintiff alleges that she and her husband went

outside to deliver a printed "no trespassing" notice to the man (to whom she refers as "Todd" and

later describes as her neighbors' contractor), which they left on the hood of his car.[3] *Id.* Upon

approaching Todd, Plaintiff "asked him not to enter [her] property and to keep his stuff and

debris away from [her] property." *Id.* Plaintiff alleges that once she and her husband went back

into their house, Todd "threw the written notice on the ground," powered up a leaf blower, re-

entered her property, and began to blow debris ("what looked like bark, dirt and stuff like that")

onto her property. *Id.* ¶¶ 3-4. Plaintiff states that she again asked Todd not to enter her property,

deposit debris, or otherwise trespass. *Id.* ¶ 3.

When Todd continued to deposit debris, Plaintiff called the Bureau and asked for

assistance. *Id.* ¶ 4. Per the dispatcher's instructions, Plaintiff and her husband remained inside

---

a City Attorney was involved. Because Plaintiff did not allege these facts in her complaint, the
Court does not consider them in resolving the pending motion to dismiss. *See Schneider v. Cal.
Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'[N]ew' allegations contained in [a
party's] opposition . . . are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of
a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving
papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in
original)). Nor may a plaintiff "effectively amend his Complaint by raising a new theory in his
response to a dispositive motion." *Cloud Found. v. Haaland*, 2024 WL 1991552, at *7 n.4 (D.
Or. Apr. 12, 2024) (cleaned up) (quoting *La Asociacion de Trabajadores de Lake Forest v. City
of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010)).

[2] In its motion to dismiss, Defendant provides the following context: "This case arises out
of a dispute between neighbors regarding the cleanup and removal of a fallen tree." ECF 9 at 8.

[3] Plaintiff also emphasizes that she has "had at all material times a permanent,
conforming and prominently posted no trespassing sign on [her] property." Compl. ¶ 1.

until an officer arrived. *Id.* Eventually, Officer Gervais[4] arrived on the scene and Plaintiff and her husband went outside to speak with him. *Id.* As they began to converse, the group was joined by Niedrist and De Guzman, who stood off to the side but seemed to be listening. *Id.* ¶¶ 4-5.

At this point, Plaintiff describes the following encounter:

> Officer Gervais instructed us to deliver the written no trespassing notice to the trespassers in his presence (Niedrist and Todd were close by and listening). Before my husband came close enough to even hand them the paper, Todd and Niedrist summoned Officer Gervais and Officer Gervais stopped my husband and escorted him back to where I was standing on our property. It should be noted that at all times in question, including during the aborted attempt to deliver the written notice at Officer Gervais's behest, my husband and I were on our own private property or on areas to which we have legal right of use and access.

*Id.* ¶ 5.

After this interaction, Plaintiff explained to the officer that she did not want anyone entering her property and pointed out the debris that Todd had left behind. *Id.* ¶ 6. Officer Gervais allegedly responded by saying that it was reasonable for Todd to trespass and deposit debris. *Id.* When pressed by Plaintiff, he repeatedly explained that Todd would clean up the debris. *Id.* Eventually, Officer Gervais informed Plaintiff that he would take no further action and told her that "I am done talking to you." *Id.* ¶ 7.

As Officer Gervais walked away, Plaintiff alleges that Niedrist stopped the officer and asked him a series of questions, which he answered "at length." *Id.* The officer then walked back to Plaintiff and "instructed [her], among other things, to have no contact with Niedrist, De Guzman[,] or Todd and to stay away from them or he would arrest [her and her husband]." *Id.*

---

[4] The parties did not provide a first name for Officer Gervais.

He allegedly repeated the phrase "I will arrest you," and that she needed to "stay away" from her neighbors and Todd, and notified Plaintiff that his sergeant would call her shortly. *Id.*

After the officer left, Plaintiff and her husband returned inside and observed Todd from their window. *Id.* ¶ 8. She alleges that Todd continued to enter her property and deposit debris, destroying plants in her garden by covering them with woodchips and running them over with machinery. *Id.* She further notes that Todd frightened her children by gesticulating and pretending to throw pieces of wood at them. *Id.*

At some later point, Sergeant Edwards[5] called Plaintiff and informed her that upon reviewing Officer Gervais's conduct and "pictures," he determined that Officer Gervais "did everything he is supposed to do. He did not violate policy—was following policy." *Id.* ¶ 10. Plaintiff alleges that the sergeant "made it clear that it was correct that [Plaintiff was] prohibited from serving any notices under the threat of arrest." *Id.* ¶ 11. Sergeant Edwards largely repeated what Officer Gervais had said, explaining that it was okay for Todd to deposit debris on Plaintiff's property because he was "performing a job." *Id.* ¶¶ 10-12. The sergeant also allegedly told Plaintiff that "I am the day shift supervisor, this word ends right here." *Id.* ¶ 15.

As of the time of filing the complaint, Plaintiff alleges that the debris remains in front of her house. *Id.* ¶ 13. She further alleges that because of the officers' comments about a potential arrest, her children are agitated and frightened when people knock at the door, and are scared to take out the trash or even walk in front of the house. *Id.* ¶ 16.

After presenting these facts, Plaintiff outlines in her complaint 22 statements that she alleges are official City "policies" under which Officer Gervais and Sergeant Edwards were acting. *Id.* ¶ 22 (e.g., "P4. Permit police officers to threaten arrest without probable cause."). She

---

[5] The parties did not provide a first name for Sergeant Edwards.

does not identify the source of these policies and it therefore appears that she drafted them herself based on her own experiences as recited above.

Plaintiff alleges violations of the following constitutional provisions as the basis of relief: (1) First Amendment, (2) Fourth Amendment, (3) Fifth Amendment (deprivation of liberty), (4) Fifth Amendment (deprivation of property), (5) Fourteenth Amendment (deprivation of liberty), and (6) Fourteenth Amendment (deprivation of property). She seeks three forms of relief. First, Plaintiff seeks a declaratory judgment holding that the City's policies are unconstitutional and that the City[6] violated her constitutional rights. Second, Plaintiff seeks no less than $10,000,000 in damages (with the addition of punitive damages, fees, and costs). Third, she seeks an injunction against the City.[7]

## DISCUSSION

Section 1983 provides "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State" who "subjects, or causes to be subjected" any person

---

[6] Plaintiff does not sue Officer Gervais in his personal capacity.

[7] In her complaint, Plaintiff lists the injunction as her "Seventh Claim for Relief," but it appears that she seeks this remedy in the context of her six constitutional claims. She seeks an injunction that:

  a. Requires the City to "cease threatening Plaintiff with arrest without probable cause";
  b. "Enjoins the City from threatening arrest without probable cause";
  c. Requires the City to "cease imposing or maintaining de facto extra-judicial restraining orders on Plaintiff";
  d. "Enjoins the City from imposing or maintaining de facto extra-judicial restraining orders";
  e. Requires the City to cease implementation and execution of its purported policies "that violate, restrict[,] and abridge Plaintiff's and other citizens' civil rights embodied in the First, Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution."

*Id.* at 21-22.

within the jurisdiction of the United States the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. A municipality or other local government is a "person" who may be sued under § 1983. *Duarte v. City of Stockton*, 60 F.4th 566, 568 (9th Cir. 2023). A local government entity, however, may not be held liable "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In other words, § 1983 does not allow recovery for the actions of a local government's employees under a theory of *respondeat superior* liability. *Id.* at 691. Instead, a plaintiff must demonstrate that a municipality had a "policy" that was the "moving force" behind a violation of the plaintiff's constitutional rights. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

"A 'policy' is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (cleaned up). A plaintiff can show a "policy," as that term is used for *Monell* liability, "in one of three ways." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 883 (9th Cir. 2022).

> First, the [municipality] may be held liable if it acted pursuant to an expressly adopted official policy. Second, the [municipality] may be held liable based on a longstanding practice or custom. Third, the [municipality] may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Id.* (cleaned up); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."); *Gordon v.*

*County of Orange*, 6 F.4th 961, 973-74 (9th Cir. 2021) (describing the three ways "[a] plaintiff can satisfy *Monell's* policy requirement").

## A. Alleged Constitutional Violations

Plaintiff alleges that Defendant violated her constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments. The Court addresses each in turn.

### 1. First Claim (First Amendment)

Plaintiff claims that Defendant violated her First Amendment rights by restricting "the ability of Plaintiff to communicate with Todd, Niedrist or De Guzman for any reason, including her desire for trespassers not to trespass, whether verbally or in writing."[8] Compl. at 12.[9] Specifically, she alleges that Officer Gervais "instructed [her and her husband], among other things, to have no contact with Niedrist, De Guzman or Todd and to stay away from them or he would arrest [Plaintiff and her husband]." *Id.* ¶ 7.

Construing the officer's statements in a light most favorable to Plaintiff, the Court finds that they could plausibly constitute a limitation on Plaintiff's speech in violation of the First Amendment. "A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not 'based on a plaintiff's fear of future injury that itself [is] too speculative to confer standing." *Wise v. City of Portland*, 539 F. Supp. 3d 1132, 1144 (D. Or. 2021) (quoting *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015)). "[T]here is substantial

---

[8] Defendant seems to misconstrue Plaintiff's position as arguing a First Amendment retaliation claim, *see* ECF 9 at 18, ECF 13 at 13, but Plaintiff does not argue retaliation and the Court therefore does not further address retaliation.

[9] Plaintiff stops numbering the paragraphs in her complaint after paragraph 22, which ends on page 11 of the complaint (ECF 1). Accordingly, when the Court references parts of Plaintiff's complaint on or after page 11, the Court will cite the page number, not the paragraph number.

caselaw in which the *threat* of an arrest—even in the absence of an actual arrest—is sufficient to chill speech." *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 52 (D.D.C. 2013) (emphasis in original) (collecting cases); *see also McCormick v. City of Lawrence*, 253 F. Supp. 2d 1172, 1192 (D. Kan. 2003) (finding that threats of arrest "deterred" plaintiff's speech and gave rise to his injury). Taking Plaintiff's allegations as true, Officer Gervais forbade Plaintiff from having any "contact" with her neighbors without explaining the duration or scope of the prohibition, under the threat of arrest. *See* Compl. ¶ 7. It is plausible that such an instruction would chill a reasonable person's freedom of speech. Accordingly, the Court finds that Plaintiff has adequately stated a violation of her First Amendment rights.

### 2. Second Claim (Fourth Amendment)

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. Seizures occur when a reasonable person would not feel "free to leave," "decline the officers' requests," or "otherwise terminate the encounter." *See Florida v. Bostick*, 501 U.S. 429, 436 (1991). When examining the facts of an alleged seizure, courts look to (1) the threatening presence and number of officers; (2) display of weapons; (3) physical touching; and (4) language or tone implying compliance will be compelled. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Plaintiff's Fourth Amendment claim has two components. First, she argues that Officer Gervais restrained "Plaintiff's freedom of movement and freedom of action" by threatening to arrest her if she approached her neighbors. Second, she argues that the Officer impermissibly imposed a "de facto extra-judicial restraining order on Plaintiff so that she could not freely access or use property to which she had a lawful right of access and use, including but not limited to her own private property." Compl. at 13.

The Court does not find that the officers' conduct amounted to a Fourth Amendment seizure of either Plaintiff or her property. First, with respect to the seizure of her person, Plaintiff does not allege that any of the *Mendenhall* factors were present. According to her complaint, Officer Gervais was the only officer onsite. Plaintiff does not allege that the officer displayed a weapon, physically touched her or her husband, or even raised his voice. There is no indication from the complaint that at any point Plaintiff was unable to return to her house or terminate the conversation and leave her property and the presence of the officer. Although Officer Gervais threatened a seizure, it was a threat based on possible future action. Plaintiff does not allege any additional factual allegations supporting an actual seizure during the altercation. Under these circumstances, Plaintiff has not sufficiently alleged a seizure. *See Jones v. Ashford*, 2017 WL 221783, at *4 (D. Md. Jan. 18, 2017) (finding no seizure where only one officer was present, he displayed no weapon, and he did not physically touch the plaintiff), *aff'd*, 691 F. App'x 113 (4th Cir. 2017); *see also Kobayashi v. McMullin*, 2022 WL 3137958, at *21 (C.D. Cal. May 31, 2022) *report and recommendation adopted in relevant part*, 2022 WL 3226169 (C.D. Cal. Aug. 8, 2022) (dismissing Fourth Amendment seizure claim where there were no allegations that any officers involved displayed a weapon, touched the plaintiff, or used language or tone of voice indicating that compliance with their request might be compelled); *Brown v. Sweeney*, 526 F. Supp. 2d 126, 132 (D. Mass. 2007) ("Generally, a mere oral threat of an arrest by a police officer absent any other factual allegations does not constitute . . . a 'seizure'").

Plaintiff also does not sufficiently allege that Officer Gervais seized her property. She does not claim that the officer prohibited her from using any portion of her private property. In fact, what the officer allegedly told Plaintiff was to "stay away" from her neighbors. Compl. ¶ 7. By Plaintiff's own account, Officer Gervais did *not* tell Plaintiff that he would arrest her for

making full use of her own property or for approaching her neighbors' property line. That Plaintiff interpreted the officer's instruction so broadly is not sufficient to constitute a Fourth Amendment "seizure."

Plaintiff has not sufficiently alleged that Officer Gervais restricted her freedom of movement on her property nor that his threat of arrest constituted a seizure. Accordingly, the Court grants Defendant's motion with respect to Plaintiff's Fourth Amendment.

### 3.  Third and Fourth Claims (Fifth Amendment)

Plaintiff alleges two claims under the Fifth Amendment Due Process Clause. First, she argues that Defendant's "de facto extra-judicial restraining order" prohibited Plaintiff from leaving her house because it abutted her neighbors' property and she did not know how close to her neighbors she was allowed to be. Compl. at 14. Second, she argues that the "restraining order" prevented Plaintiff from excluding unwanted persons from her property, excluding people from depositing unwanted material on her property, and fully accessing her own property. *Id.* at 15-16. As part of this second claim, Plaintiff also alleges that the "restraining order" constituted an unlawful "taking" of the property. *Id.* at 15.

To the extent that these two claims are predicated on the Due Process Clause, they have been waived because Plaintiff does not respond to Defendant's arguments regarding them in her response. [10] Moreover, the Due Process Clause of the Fifth Amendment protects against

---

[10] A plaintiff who "makes a claim" in a complaint "but fails to raise the issue in response to a defendant's motion to dismiss" that claim, "has effectively abandoned [that] claim." *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *see also Maldonado v. City of Ripon*, 2021 WL 2682163, at *8 (E.D. Cal. June 30, 2021) ("Plaintiff does not address Defendants' arguments regarding punitive damages in his opposition to the motion to dismiss and therefore concedes the arguments."); *Kerrigan v. Allstate Ins.*, 543 F. Supp. 3d 843, 845-46 (C.D. Cal. 2021) ("Plaintiff also did not oppose and, thus, concedes, Defendants' argument that because Allstate Insurance was not a party to the insurance policy at issue in this action it was improperly named and should be dismissed.").

*federal*—not local—conduct. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008)

(finding that a Fifth Amendment Due Process claim against a police officer was "plainly

foreclosed by the Constitution" because that clause "only applies to the federal government");

*see also Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (finding a defendant's

citation of the Fifth Amendment in a habeas corpus petition against a state court was "incorrect"

because "[t]he Fifth Amendment prohibits the federal government from depriving persons of due

process, while the Fourteenth Amendment explicitly prohibits deprivations without due process

by the several States . . . .").

To the extent that Plaintiff's fourth claim rests on the Takings Clause, the Court is

unpersuaded that the alleged conduct would constitute an unconstitutional taking. The Takings

Clause states that "private property [shall not] be taken for public use, without just

compensation." U.S. Const. amend. V. The Court notes at the outset that Plaintiff is correct that

this provision of the Fifth Amendment *does* apply to municipalities, albeit as incorporated by the

Fourteenth Amendment. *See Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994). Plaintiff has not,

however, adequately pleaded that what occurred was actually a taking.

First, Plaintiff has not alleged a physical taking; she makes no claim that Officer Gervais

or Sergeant Edwards (or anyone else working for the City) confiscated or physically occupied

her property. *Cf. Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-48 (2021) (providing

examples of government conduct that rises to a physical taking). Officer Gervais instructed

Plaintiff only to "stay away" from her neighbors, not to avoid use of her property. That Plaintiff

feels that she "cannot leave her property without first ascertaining whether Todd, Niedrist[,] and

De Guzman are in the vicinity," Compl. ¶ 14, is an unsupported and unreasonable interpretation

PAGE 13 – OPINION AND ORDER

of Officer Gervais's instruction. As pleaded in the complaint, there is no allegation of a physical confiscation.

Second, Plaintiff does not allege a regulatory taking wherein Defendant would have left no reasonable economically viable use of the property. *Cf. Cedar Point Nursery*, 594 U.S. at 148-49 (providing examples of government conduct that rises to a regulatory taking). Insofar as Plaintiff suggests that her garden was damaged by Todd's actions, she does not assert that this damage left *no economically viable use* of the property. Nor does she claim that Todd was an agent of the City such that it could be liable for his actions.

Accordingly, the Court finds that Plaintiff has not sufficiently alleged a constitutional violation under both the Due Process Clause and the Takings Clause of the Fifth Amendment. The Court thus grants Defendant's motion against Plaintiff's third and fourth claims.

### 4. Fifth and Sixth Claims (Fourteenth Amendment)

Plaintiff's fifth and sixth claims allege due process violations under the Fourteenth Amendment. Plaintiff does not identify whether she brings procedural or substantive due claims, although her response suggests that her claims are only procedural due process claims.[11] To bring a procedural due process claim, a plaintiff must show (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.

---

[11] In the event, however, that Plaintiff intended to allege a substantive due process claim, the Court clarifies here that Plaintiff has not sufficiently done so. To state a substantive due process claim, a § 1983 plaintiff must show that he was deprived of life, liberty, or property "in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Officer Gervais's conduct, while as alleged may be worthy of rebuke, does not shock the conscience. His encounter with Plaintiff was brief. None of the parties used or even displayed weapons. *Compare, e.g.*, *Rochin v. California*, 342 U.S. 165, 173-74 (1952) (holding that administration of a vomit-inducing substance through a tube into an individual's stomach against his will in order to obtain evidence he swallowed shocks the conscience).

PAGE 14 – OPINION AND ORDER

*Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001); *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990). "The essence of procedural due process is that 'individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."'" *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018) (quoting *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)).

Plaintiff has sufficiently alleged constitutionally protected liberty and property interests in the ability to freely use and enjoy her property and speak with her neighbors and Todd, their contractor. Accepting Plaintiff's allegations as true, Officer Gervais ordered Plaintiff to have "no contact" and to "stay away" from her neighbors and their contractor or face arrest. This order did not have any time limitation and did not provide any context for how far away Plaintiff needed to stay. The impending threat of arrest is a restriction on Plaintiff's liberty—both because she can no longer freely communicate with her neighbors and their contractor and because she cannot move freely about her property without risking getting too close and violating the order. Indeed, because Officer Gervais's order to "stay away" was also geographically unbounded, Plaintiff sufficiently pleads a restriction on her property rights as well; it is unclear how close Plaintiff was allowed to get to her neighbors' property line before she would trigger Officer Gervais's threat of arrest. Finally, both Officer Gervais and Sergeant Edwards told Plaintiff that she had to stay away from—and allow the intrusion of—the contractor, on her property. That Plaintiff was required—under threat of arrest—to permit her neighbors' contractor to dump debris and destroy foliage in her yard further illustrates intrusions into her liberty and property interests.

When the government deprives an individual of liberty or property rights, it must supply certain basic safeguards, such as notice of the charges or issue, the opportunity for a meaningful hearing, and an impartial decision maker. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 313 (1950); *Goldberg v. Kelly*, 397 U.S. 254, 267-71 (1970). The robustness of the process required is a separate issue, but the dispositive allegation here is that *no* process was provided at all. Plaintiff had no meaningful opportunity to be heard and received no explanation from Officer Gervais as to *why* Plaintiff could no longer communicate with her neighbors. Officer Gervais effectively unilaterally issued a permanent general restraining on behalf of Niedrist and De Guzman against Plaintiff but provided her with none of the required procedural safeguards.[12] Accordingly, the Court finds that Plaintiff has sufficiently pleaded a deprivation of her liberty and property in violation of the Due Process Clause of the Fourteenth Amendment.

## B. *Monell* Liability

Before conducting the *Monell* analysis, the Court distinguishes between two "policies" at issue in this case. The first is the set of 22 policies that Plaintiff includes in her complaint. Compl. ¶ 12. From what the Court understands, this list is something that Plaintiff drafted based on her own experience and is not an official list that Plaintiff obtained from the Bureau. The second policy is the "policy" to which Sergeant Edwards referred to during his phone call with Plaintiff ("Sergeant Edwards additionally stated: 'Officer Gervais did everything he was supposed to. He did not violate policy – he was following policy.'"). *Id.* ¶ 10.

### 1. Official policy

Plaintiff could satisfy *Monell* by alleging that Defendant acted "pursuant to an expressly adopted official policy." *Sabra*, 44 F.4th at 883 (quoting *Gordon*, 6 F.4th at 973). Plaintiff's list

---

[12] The State of Oregon issues five types of restraining orders, each of which require that the respondent have an opportunity to be heard in court, and a criminal no contact order that may be obtained by the prosecution. *See, e.g.*, *Getting a Restraining Order in Oregon*, Oregon Law Help, https://oregonlawhelp.org/topics/safety/restraining-orders-oregon/getting-restraining-order-oregon (describing the five types of restraining orders and the criminal no contact order and explaining that the respondent has a right to participate in the case before the judge).

of 22 policies, which *she* drafted based on her experiences, does not constitute an official policy because she does not allege that the *Bureau* produced or expressly adopted any of them.

The policy that Sergeant Edwards referenced, however, is a different story. Although Plaintiff's description of this policy in her complaint is too vague to establish the existence of an official policy, the Court finds the possibility of satisfying *Monell* if Plaintiff offers further detail. If Plaintiff seeks to file an amended complaint, she will need to further explain the details of the policy to which Sergeant Edwards referred, and how that policy was the moving force behind her alleged rights violation.

### 2. Longstanding practice or custom

Even in the absence of an official policy, municipalities may still be held liable for an unconstitutional widespread practice or custom. *Sabra*, 44 F.4th at 883. "An unconstitutional policy need not be formal or written to create municipal liability under Section 1983; however, it must be 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Gordon*, 6 F.4th at 973 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 167-68 (1970)).

In her complaint, Plaintiff describes only one encounter with the Bureau. She does not plead any facts suggesting that officers in the Bureau allegedly mishandled that encounter pursuant to a longstanding practice or custom.[13] Nor does she allege that anyone else in the community experienced similar encounters. Generally, "a single incident of unconstitutional

---

[13] In her response to the motion to dismiss, Plaintiff argues that she is "not inferring policy from a spontaneous act of [Officer] Gervais," but rather that "[Sergeant] Edwards made clear that not only there was such a policy, but that the policy was long standing, as he pointed out that [Officer] Gervais was a very experienced officer and following policy." ECF 12 ¶¶ 12, 17. Without further detail, her assumption that a longstanding policy existed because Officer Gervais was experienced is conclusory.

activity is not sufficient to impose liability under *Monell*." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *see also Walker for K.B. v. Portland Pub. Sch. Dist. No. 1J*, 2023 WL 3120291, at *9 (D. Or. Apr. 27, 2023) (finding that the plaintiff's awareness of only one specific incident of potentially unconstitutional activity was insufficient under *Monell*). Once again, Plaintiff's list of 22 policies does not establish that the Bureau subscribed to any policies that were the moving force behind her alleged rights violations. The policy that Sergeant Edwards referenced, however, may suffice for the reasons described above—so long as Plaintiff can provide necessary context. But without further facts that Officer Gervais and Sergeant Edwards acted in service of a longstanding practice or custom, Plaintiff's complaint does not establish this second pathway to *Monell* liability.

### 3. An official with final policy-making authority

A choice made by a municipal officer with final policy-making authority *or* the ratification of the decisions of a subordinate by an official with final policy-making authority may also serve as the *Monell* hook for municipal liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). To determine whether an official has final policy-making authority, courts look to state law. *Praprotnik*, 485 U.S. at 124. In Portland, the Chief of Police is the final policymaker for the Bureau. *See Cantu v. City of Portland*, 2020 WL 2952972, at *6 (D. Or. June 3, 2020) (citing Charter of the City of Portland, § 3.20.050 in making this determination).

Plaintiff alleges that Sergeant Edwards told her that he was the "day shift supervisor," which Plaintiff took to mean that he was the "designated final decision maker." Compl. ¶ 15. There is a difference, however, between having authority to discipline (or fail to discipline) a subordinate officer and having authority to be the final policymaker on behalf of the City on a

particular issue. *See Boudjerada v. City of Eugene*, 2023 WL 11054157, at *7 n.3 (D. Or. Sept. 8, 2023) *report and recommendation adopted as modified*, 2024 WL 1271040 (D. Or. Mar. 26, 2024) ("[C]ourts in this circuit have stopped short of holding that a plaintiff can prove *Monell* liability simply on the basis of a defendant department's post-incident ratification through failure to discipline . . . the officer directly involved." (quoting *Mueller v. Cruz*, 2015 WL 9455565, at *3 (C.D. Cal. Dec. 23, 2015))); *see also Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988) (explaining that within a police structure similar to Portland's, a police sergeant "is not the city official responsible for establishing final department policy" even though he or she "may have discretion to recommend hiring, firing, and discipline of employees"). In this case, the fact that Sergeant Edwards allegedly had the final word on whether to discipline Officer Gervais is insufficient to designate him as a final policymaker within the Bureau.[14] Without further facts to that effect, Plaintiff cannot establish *Monell* liability on this third and final pathway, and the Court dismisses her First and Fourteenth Amendment claims on this basis.

## C. Relief

Plaintiff seeks a declaratory judgment, damages (including punitive damages), and injunctive relief. For the reasons discussed below, the Court holds that Plaintiff may not proceed in her request for punitive damages. Plaintiff does, however, have standing for equitable relief.

---

[14] In her response to the motion to dismiss, Plaintiff seems to slightly recast her argument on this point by arguing that her stance was not that Sergeant Edwards was "making up policy as he went along," but rather that he "was following policies already established by Defendant that inflicted constitutional injuries on Plaintiff." ECF 12 ¶ 14. The problem with this argument is that Plaintiff assumes, without any facts to support her conclusion, that the policy to which Sergeant Edwards referred was one of the 22 policies that Plaintiff drafted. Without further facts to support her argument that Portland police officers do, in fact, subscribe to some version of Plaintiff's list, this modified argument is also unsuccessful.

### 1.  Punitive Damages

Plaintiff requests punitive damages for each of her first six claims. Municipalities, however, are not liable for punitive damages under § 1983. *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) ("Although a municipality may be liable for compensatory damages in § 1983 actions, it is immune from punitive damages under the statute.").

In her response to Defendant's motion to dismiss, Plaintiff makes several points about the purpose of punitive damages and how municipalities may be using the holding in *Newport* to partially circumvent liability for promulgating unconstitutional policies. Plaintiff specifically references footnote 29 in *Newport*, which contemplates "an extreme situation where the taxpayers are directly responsible for perpetuating an outrageous abuse of constitutional rights," in which case punitive damages *may* be appropriate. *See* 453 U.S. at 267 n.29. But as that footnote concludes, "such an occurrence is sufficiently unlikely that we need not anticipate it here." *Id.*

The Court is not persuaded that this case meets the "extreme situation" standard articulated in *Newport*. First, Plaintiff offers no examples of cases where a court granted punitive damages against a municipality under § 1983. Second, Plaintiff seems to misunderstand when footnote 29 would come into play. Plaintiff repeatedly asserts that the Bureau kept taxpayers "in the dark," and that taxpayers were not aware of and never voted for the policies that she describes. It is not clear, however, how Portland taxpayers could be "directly responsible" for perpetuating the alleged constitutional abuses when they did not implement those procedures or

even *know* about them.[15] Therefore, although the Court acknowledges Plaintiff's arguments regarding *Newport*, it ultimately adheres to the well-established principle that punitive damages are not awarded against municipalities sued under § 1983.

### 2.  Equitable Relief

Plaintiff also seeks equitable relief. Defendant moves to dismiss this relief, particularly Plaintiff's request for an injunction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing.

The Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). To have standing, a plaintiff must show (1) she has suffered an "injury in fact"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). To seek prospective relief such as an injunction, a plaintiff must show that "the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

---

[15] *Cf. Ciraolo v. City of New York*, 216 F.3d 236, 240 (2d Cir. 2000) ("The footnote does not tell us when, in the Court's judgment, taxpayers could be held directly responsible for a municipal policy. Although it could be argued that, to the extent that they are also voters who play a part in choosing municipal officers, taxpayers are always responsible for municipal policies, such responsibility is clearly too indirect to give rise to liability for punitive damages under the logic of *Newport*. Footnote 29 seems, instead, to contemplate a much more immediate connection between the taxpayers' behavior and the unconstitutional municipal policy, perhaps—for example—as close a link as a referendum in which the taxpayers directly adopted the invalid policy.").

Defendant argues that Plaintiff has not demonstrated a substantial risk of future harm of the same kind alleged in the complaint. Defendant, however, mischaracterizes Plaintiff's allegations. Plaintiff alleges that Officer Gervais commanded Plaintiff and her husband to "stay away" from her neighbors, or else he would arrest them. As noted earlier, Officer Gervais did not temporally limit this instruction in any way. Indeed, Plaintiff alleges in detail that as of the filing of the complaint, her family—including her young children—still fear using parts of *their own* property because they would need to walk past Niedrist and De Guzman's house. *See* Compl. ¶ 16. This temporally unbounded threat of arrest issued by a police officer rises above mere conjecture.

Therefore, this case does not involve a fear of a future repetition of a discrete past incident, *e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), but rather a fear of the consequences of an *ongoing* injury. Plaintiff thus presents a case or controversy for which injunctive relief may be granted. *See id.* at 102; *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020). The Court finds that Plaintiff has standing to seek injunctive relief.[16] Because *Monell*'s "policy or custom" requirement applies both in § 1983 cases seeking monetary *or* prospective equitable relief, however, the Court still dismisses Plaintiff's six constitutional claims as explained above. *See Los Angeles County v. Humphries*, 562 U.S. 29, 36-37 (2010).

## CONCLUSION

The Court GRANTS Defendant's motion to dismiss. If Plaintiff believes in good faith that she can cure the deficiencies identified in the Opinion and Order, she may file an amended

---

[16] By coming to this conclusion, the Court is not commenting on the scope of a possible injunction or the viability of the specific injunctive relief that Plaintiff requests in her "Seventh Claim for Relief," ECF 1 at 19-20, 21-22.

complaint within two weeks. If Plaintiff does not file an amended complaint by this deadline, the

Court will enter a judgment dismissing the case.

**IT IS SO ORDERED**.

DATED this 14th day of November, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge