IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KATHRYN ASH**, | Case No. 3:24-cv-434-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **CITY OF PORTLAND**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Kathryn Ash, representing herself, originally sued the City of Portland under 42 U.S.C. § 1983, alleging that two members of the Portland Police Bureau ("Bureau") violated her First, Fourth, Fifth, and Fourteenth Amendment rights. The Court granted Defendant's motion to dismiss on November 14, 2024 ("MTD Order")[1] but granted Plaintiff leave to amend and replead her claims under the First and Fourteenth Amendment. Plaintiff then filed her first amended complaint ("FAC"). The Court again granted Defendant's motion to dismiss on April 11, 2025 ("FAC Order"),[2] with leave to amend those claims. Plaintiff filed her second amended complaint

---

[1] *Ash v. City of Portland*, 2024 WL 4794542 (D. Or. Nov. 14, 2024).

[2] ECF 26.

PAGE 1 – ORDER

("SAC") on May 2, 2025,[3] and Defendant moves to dismiss the SAC with prejudice. For the reasons stated below, the Court grants Defendant's motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

---

[3] The Court had granted Plaintiff leave to amend in its FAC Order. On May 2, 2025, Plaintiff filed a motion for leave to file her SAC, then filed her SAC. The Court granted her motion for leave to file the SAC on May 19, 2025.

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted)

      A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION[4]

### A. Official Policy

In its MTD Order, the Court explained that Plaintiff's description of the policy allegedly referenced by Sergeant Edwards was too vague to establish the existence of an official policy.[5] *See Ash*, 2024 WL 4794542, at *8. Plaintiff then described the terms of the alleged policy in her FAC at ¶ 32. In the FAC Order, the Court concluded that it was implausible that the City of Portland would have an unwritten policy as alleged by Plaintiff, which by its terms in FAC ¶ 32 required Bureau officers to impose "de facto restraining orders" on persons who accurately report violations of their rights or who "try to tell someone something that they already know." FAC Order at 6.

The only addition Plaintiff makes in the SAC to the actual terms of the alleged policy is the word "may," making its application permissive instead of mandatory. SAC ¶ 32. Plaintiff now also describes the policy as "one of the tools in the 'policing toolkit' that are available to Defendant's police officers." *Id.* ¶ 33. But the underlying alleged policy that the Court found implausible remains the same.

Plaintiff also alleges new facts that relate to the purported policy. She contends that the "intent" of the policy "was to allow some sort of 'work' or something 'reasonable' (as

---

[4] The Court provided a full overview of the facts in its previous orders and thus only discusses in this Order the newly alleged facts in the SAC relevant to resolving the pending motion to dismiss.

[5] In the Complaint, FAC, and now SAC, Plaintiff also identified 22 purported policies. SAC ¶ 74. In both the MTD Order and FAC Order, the Court explained that this list does not constitute an official policy under *Monell* because Plaintiff did not allege that the Bureau produced or expressly adopted them. *See Ash*, 2024 WL 4794542, at *9 n.14; FAC Order at 7 n.2. Plaintiff again makes no such allegation in the SAC, so these listed policies are still insufficient for *Monell* purposes.

determined by Defendant) to proceed." *Id.* ¶ 36; *see also id.* ¶ 37. She asserts that the policy is motivated by the Bureau's "goal of reducing the cost of policing," *id.* ¶ 37, and the "substantial pressure on officers to 'close' service calls." *Id.* ¶ 38. And she criticizes the alleged policy because it "does not take into consideration whether the complaining party was correct or accurate in reporting violations of his or her property or civil rights." *Id.* ¶ 34.

Plaintiff's nominal change to the terms of the alleged policy in ¶ 32—making it permissive instead of mandatory—does not cure the defect identified in the FAC Order. The fact that the alleged policy now uses the word "may" does not make it any more plausible that the Bureau would have such an official unwritten policy. *See* FAC Order at 6. Nor do the other new facts save Plaintiff's alleged policy. In fact, they make Plaintiff's alleged policy even less plausible. Taking as true Plaintiff's new allegation that the City aims to reduce the cost of policing, for example, it is implausible that the City would have an official policy allowing officers to issue restraining orders against persons who report a rights violation, because enforcing those orders would needlessly raise the cost of policing.[6] Because Plaintiff does not cure the deficiency identified in the FAC Order, she does not plausibly allege the existence of an official policy.

B.  **Longstanding Custom or Practice**

In the MTD Order, the Court explained that Plaintiff did "not plead any facts suggesting" that Defendant's treatment of Plaintiff was "pursuant to a longstanding practice or custom,"

---

[6] It is also implausible that the Bureau would create an official policy that is simultaneously permissive and mandatory. As alleged in the SAC, Bureau officers may choose whether to apply the policy but, once applied, they cannot exercise any discretion in enforcing the restraining orders, even if it is later revealed that the complaining party accurately reported violations of her rights.

PAGE 5 – ORDER

because each of Plaintiff's interactions with Defendant stemmed from the single March 2, 2024 incident. *See Ash*, 2024 WL 4794542, at *8. Plaintiff attempted to cure this defect in the FAC and, in opposing Defendant's second motion to dismiss, argued that she had multiple encounters with the Bureau. *See* FAC Order at 7 n.3. As the Court explained in the FAC Order, however, each of these interactions still "concerned a single event" and "not a series of separate incidents that would establish a *longstanding* practice or custom." *Id.* (emphasis in original).

Plaintiff now alleges in the SAC that "[o]n our information and belief, it is a longstanding practice, also supported by Portland City Code 3.10.020, for city attorneys to have the authority to formulate, promulgate[,] and dictate policies to . . . the Portland Police Department, including instructing both individual officers and the chief of police on its implementation." SAC ¶ 39.[7] She also alleges on information and belief that "Defendant and its City Attorney's Office have, historically and publicly, interpreted that the city attorneys have this authority and have acted accordingly." *Id.*

Plaintiff fails to allege sufficient *facts* supporting this purported "longstanding practice." At best, liberally construing her allegations, she states that her incident is one example of the

---

[7] Plaintiff also reproduces the following excerpt from the Portland City Code § 3.10.020 at ¶ 39:

> The City Attorney has the following duties: ...
> C.     Give legal advice and opinions orally and in writing and prepare legal documents and ordinances for the Mayor, any Council member, the City Council, the City Administrator, or any board, bureau, committee, commission, or agency of the City; ...
> E.     Seek to ensure that City employees comply with legal and ethical requirements of public employment by providing advice, direction and opinions; …
> F.     Seek to prevent legal problems for the City by training, directing and educating City employees about legal issues[.]

PAGE 6 – ORDER

alleged practice in which her neighbor dictated the conduct of the responding officer. She does not, however, allege any other incidents, such as other city attorneys who engaged in this purported longstanding custom or any other person who has been harmed by this unwritten policy. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Nor does she provide any example of the alleged "public" uses of this policy.

Plaintiff instead extrapolates from one provision of the Portland City Code to reason that, because the City Attorney has the "duty" to "give legal advice" to some instrumentalities of the City, a custom must exist whereby any deputy city attorney may issue real-time legal commands that any Bureau officer (including the Chief of Police) will immediately follow. This is insufficient plausibly to allege a longstanding improper custom. *See Crockett v. Portland Police*, 2020 WL 5751563, at *4 (D. Or. Sept. 25, 2020) (dismissing *Monell* custom or practice claim where the plaintiff alleged that city employees have a "historical pattern practice and policy" of racial discrimination, but did "not allege[ ] facts describing any other incidents of discrimination to support his conclusory allegation that a longstanding custom or practice exists" (quotation marks omitted)). Additionally, Plaintiff's alleged custom and practice that city attorneys dictate specific conduct of police officers and the Chief of Police is not plausible. Further, the Court does not credit the allegations in SAC ¶ 39 because they are conclusory.

Construing Plaintiff's SAC liberally, *Hebbe*, 627 F.3d at 342, the real gravamen of ¶ 39 is that city attorneys have authority to make policy on behalf of the City by issuing commands to

Bureau officers. That allegation is duplicative of Plaintiff's claim that city attorneys are final decisionmakers, which the Court addresses next.

## C. Final Decisionmaker

In the MTD Order, the Court explained that Plaintiff did not plead sufficient facts to establish that Sergeant Edwards was a final decisionmaker for the City, even though he had the authority to discipline Officer Gervais. *Ash*, 2024 WL 4794542, at *9. In the FAC, Plaintiff modestly supplemented her allegations about Sergeant Edwards and alleged in the alternative that Deputy City Attorney Niedrist was a final decisionmaker because she could direct Officer Gervais's actions. The Court explained that the FAC did not allege facts sufficient to establish that Niedrist was acting in her official capacity when she spoke to Gervais and, even if it did, that the FAC did not allege facts sufficient to establish that she was a final decisionmaker. FAC Order at 8-9.[8]

In the SAC, Plaintiff now alleges that "Deputy City Attorney Niedrist was acting in her official capacity and/or with the authority of her official position" in her interactions with Officer Gervais. *Id.* ¶ 41. That is a conclusory legal allegation that the Court is not required to assume true. *See Iqbal*, 556 U.S. at 678; *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."). Plaintiff also now asserts that the "Portland City Code does not provide for any exceptions to the attorney-client relationship," such that

---

[8] The Court also explained that the new allegations about Sergeant Edwards were insufficient to establish that he was a final decisionmaker. FAC Order at 8. Plaintiff does not allege additional facts in the SAC about Sergeant Edwards' status as a final decisionmaker.

every interaction between a city attorney and a Bureau officer is an attorney-client communication. SAC ¶ 40.[9] That is another legal conclusion that the Court need not credit.

Even if Plaintiff had alleged sufficient facts to establish that Deputy City Attorney Niedrist was giving Officer Gervais legal advice, however, the problem with this theory identified in the FAC Order remains: "Plaintiff has not sufficiently shown that a deputy city attorney is a final decisionmaker." FAC Order at 9. As explained, Portland City Code § 3.10.020 gives the Portland City Attorney's Office the authority to provide only "advice, direction and opinions" to City employees. In *Pembaur v. City of Cincinnati*, by contrast, a county prosecutor issued a "command" that the Supreme Court explicitly recognized was more binding than "mere 'legal advice'" under the relevant state law. 475 U.S. 469, 485 (1986). Thus, Plaintiff has not plausibly alleged that Niedrist was a final decisionmaker.

## CONCLUSION

The Court GRANTS Defendant's motion to dismiss this case with prejudice, ECF 29.

**IT IS SO ORDERED.**

DATED this 29th day of August, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[9] In support of that allegation, Plaintiff reproduces the following excerpt of Portland City Code § 3.10.050 at ¶ 40:

> A. The relationship between the Office of City Attorney and the City is an attorney-client relationship, with the City being entitled to all benefits thereof.
> B. Correspondence between the City Attorney and others in the City and the opinions and advice provided by the City Attorney to the City or to any City department, official, or employee are privileged attorney-client communications.